United States District Court
Northern District of California

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

CHI DA LIU,

    Defendant.

Case No.: CR-13-71049-MAG

DETENTION ORDER

## I. BACKGROUND INFORMATION

Defendant Chi Da Liu is charged by criminal complaint with violations of 31 U.S.C. §§ 5316(a)(1)(B), 5316(b), 5322(a) (knowingly and willfully failing to file an accurate Report of International Transportation of Currency or Monetary Instruments, when transporting currency or other monetary instruments more than $10,000, to a place in the United States from a place outside the United States) and 18 U.S.C. § 1001(a)(2) (knowingly and willfully making a false statement and representation as to a material fact). On September 4, 2013 the United States moved for Defendant's detention pursuant to the Bail Reform Act and requested a hearing as permitted by 18 U.S.C. § 3142(f). Pretrial Services prepared a full bail study and recommended that Defendant be detained. The court conducted an initial detention hearing on September 9, 2013. That hearing was continued to September 13, 2013. Defendant was present, in custody, and represented by Attorney Emmanuel Enyinwa and Suzanne Yee. Assistant United States Attorney Aaron Wegner appeared on behalf of the Government. For the reasons set forth below, the court orders that Defendant be detained.

## II. LEGAL ANALYSIS

The Bail Reform Act requires that, in a pretrial posture, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be

mitigated through the imposition of conditions of release.  If the government does not meet its burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or danger to any person or the community.  Close cases should result in release: "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (Walker, J.) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

A person facing trial generally shall be released if some "condition, or combination of conditions . . . [can] reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(c).  In non-capital cases, pretrial release should be denied "[o]nly in rare circumstances." *Motamedi,* 767 F.2d at 1405; *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception").  Bail hearings generally proceed by proffer, and the rules of evidence do not apply. 18 U.S.C. § 3142(f).  At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of any other person or the community.  *Id.*  The Bail Reform Act "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *Motamedi*, 767 F.2d at 1405.

In evaluating whether pretrial release is appropriate, a court must consider  (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release.  18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at 1407.

**A. The Nature and Circumstances of the Offense and the Weight of the Evidence**

The complaint charges that on or about July 10, 2011, Defendant arrived at Miami International Airport from Caracas, Venezuela. During primary examination, U.S. Customs and Border Protection discovered a Treasury Enforcement Communications System alert for Defendant. That alert was placed because law enforcement suspected that Defendant was involved in human trafficking/smuggling. During secondary examination, U.S. Customs Officers discovered that two U.S. visas in Defendant's Chinese passport had been obtained through false statements. After being advised of his rights, Defendant admitted to U.S. Customs Officers and Diplomatic Security Service Special Agents that he had lied on his application for the two U.S. visas.

Defendant was arrested, and officials discovered that Defendant was transporting over $10,000 in currency and monetary instruments. Defendant, however, had declared that he was not transporting more than $10,000 in currency and monetary instruments on his Customs Form 6059(b). Defendant had also failed to file the required Report of International Transportation of Currency or Monetary Instruments. As a result of this conduct, a grand jury in the Southern District of Florida charged Defendant in a four-count criminal indictment with violations of 31 U.S.C. §§ 5316(a)(1)(B), 5316(b), 5322(a); 18 U.S.C. § 1001(a)(2); and 18 § U.S.C. 1546(a). The judge presiding over that matter ordered Defendant detained, finding that no condition or combination of conditions would reasonably assure Defendant's appearance at future court proceedings.

In connection with the above charges, Defendant entered into a plea agreement. He entered a guilty plea as to counts two (bulk cash smuggling) and four (visa fraud) of the indictment in exchange for a dismissal of the remaining counts. Defendant also agreed to voluntarily renounce his United States citizenship before a diplomatic or consular officer of the United States in a foreign state and to surrender his United States passport for cancellation within ten days of leaving the United States, which he was to do within five days of being released from imprisonment.

DETENTION ORDER
CR-13-71049-MAG                                3

On November 29, 2011, Defendant was sentenced to a term of imprisonment of six months for counts two and four of the indictment, to be served concurrently. On May 25, 2012, Defendant was charged by information with seven counts of alien smuggling. Defendant entered a guilty plea as to each of those counts. On September 12, 2012, Defendant was sentenced to a term of imprisonment of 21 months. At the time of sentencing, the Government reminded Defendant of his obligation to leave the United States within five days of his release and renounce his citizenship, as set out in the plea agreement relating to his July 2011 conduct.

On or about July 15, 2013, Defendant was released from the custody of the Bureau of Prisons. According to United States Probation for the Northern District of California, Defendant has reported in person as early as July 15, 2013 and as recently as August 8, 2013. Given Defendant's apparent failure to comply with the terms of the existing plea agreement, the Government has re-filed the charges previously dismissed pursuant to that agreement. Defendant is now charged with violations of 31 U.S.C. §§ 5316(a)(1)(B), 5316(b), 5322(a) (knowingly and willfully failing to file an accurate Report of International Transportation of Currency or Monetary Instruments when transporting currency and monetary instruments of more than $10,000 at one time to a place in the United States from and through a place outside of the United States) and 18 U.S.C. § 1001(a)(2) (knowingly and willfully making a false statement and representation as to a material fact). While these offenses do not give rise to a rebuttable presumption of detention, the record in this case nonetheless weighs in favor of detention.

The weight of the evidence, while the least important factor, supports detention. Here, Defendant faces charges as a result of his failure to comply with a plea agreement, pursuant to which he was to voluntarily renounce his United States citizenship before a diplomatic or consular officer of the United States in a foreign state and to surrender his United States passport for cancellation, within ten days of leaving the United States, which he was to do within five days of being released from imprisonment. Despite these conditions, Defendant remains in the United States.

//

//

DETENTION ORDER
CR-13-71049-MAG                                                  4

**B. The History and Characteristics of the Defendant and the Nature and Seriousness of the Danger to Any Person or the Community**

Defendant is 55 years old. He lives in El Cerrito, California, where he has resided for the past four years. Defendant graduated from high school and attended service professional college in China. Defendant has worked for his current employer since 2013 and presumably began his employment shortly after his release in July 15, 2013. Defendant does not have a history of mental health issues or illicit drug use. Defendant has been separated from his wife since 1993 and has recently filed for divorce. Defendant has two adult children, living in California and New York. He maintains little contact with them.

Defendant has a history of engaging in conduct involving false statements to the Government, including failing to comply with reporting requirements, fraud and misuse of identity documents, and conspiracy to smuggle aliens into the United States. This criminal history in and by itself does not warrant detention based on the risk of danger to any person or the community. However, as discussed immediately below, detention is appropriate here based on the risk of Defendant's nonappearance.

**C. Risk of Nonappearance**

On balance, the factors in this case show that the risk of Defendant's nonappearance is significant and that the risk cannot be mitigated through any condition or combination of conditions. Defendant does not have a history of mental health issues or illicit drug use. However, Defendant does not have strong ties to the community. Defendant has been separated from his wife since 1993 and has recently filed for divorce. He maintains minimal contact with his two adult children, who live in New York and California. Defendant has only worked for his current employer for a few months. The court also notes that while Defendant does not have a history of failing to appear in prior court proceedings, Defendant was previously detained as a risk of flight while charges were pending against him in the Southern District of Florida.

In addition, Defendant has a history of international travel, including trips to Venezuela in 2007 and 2011 and yearly trips to Canada. Defendant has financial resources and assets totaling approximately $23,000. Defendant intends to live in Guatemala permanently, where he co-owns

DETENTION ORDER
CR-13-71049-MAG 5

a hotel, has a vehicle, and maintains a savings account with an approximate balance of $6,000. In fact, Defendant's counsel, Ms. Yee, informed the attorney for the Government that if Defendant were released from custody, he would fly to Guatemala immediately. Yet, at the detention hearing, Ms. Yee argued that Defendant's Chinese passport is no longer valid because the Chinese government does not recognize dual citizenship, and that Defendant cannot be both a United States citizen and a Chinese citizen. The court is unclear about the whereabouts of the Chinese passport. The Pretrial Services Report indicated that the Chinese passport was en route to Defendant from the Chinese government. If the passport is invalid, it is unclear why the Chinese government would send it to Defendant. The Assistant United States Attorney in Florida believes that Defendant has the passport and will flee the country if released instead of appearing in court in Florida. There appears to be a great risk of flight given that Defendant may be in possession of his Chinese passport, which he never surrendered to the court or to Pretrial Services, coupled with his attorney's promise that he would fly to Guatemala if released despite her contention that Defendant is essentially a man "without a country" or a valid passport with which to flee.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

DETENTION ORDER
CR-13-71049-MAG                                      6

### III. CONCLUSION

In light of Defendant's criminal history, the nature of the instant offense, and the weight of the evidence, the Court finds that Defendant presents a risk of nonappearance, and that there is no condition or combination of conditions that will reasonably assure his appearance as required.

For the reasons set forth above, Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

DATED: September 17, 2013

KANDIS A. WESTMORE
United States Magistrate Judge